SIMON THULEMEYER v. W. J. JONES.

1. A *supersedeas* bond on appeal to the Supreme Court, does not vacate the lien of the judgment appealed from.
2. Judgment liens attach to property acquired after the rendition of a judgment of the District Court, as well as to that acquired previous thereto.
3. Sections 13 and 14 of the Act of August 13, 1870 (General Laws for 1870, page 74), provided for an " official journal" in each judicial district, and directed that all judicial sales should be advertised therein. A sheriff's deed being objected to, because the sale was not advertised in the official journal, it is *held*, that the objection is of no avail.
4. To a sheriff's deed it was objected that the maker was not sheriff, because the " Enabling Act" of 1870, under which he was appointed sheriff by the Governor, was unconstitutional, and therefore his appointment was void. But *held*, that the official acts of a sheriff *de facto*, cannot be thus impeached. (Aulanier *v.* The Governor, 1 Texas, 653.)

APPEAL from Colorado. Tried below before the Hon. Livingston Lindsay.

This was an action of trespass to try title, instituted by the appellee against the appellant. Both parties derive title through Robert Robson. Jones, the appellee, derives his title as follows : In September, 1868, he obtained a judgment in the District Court of Colorado county, against Robert Robson, for the sum of one thousand seven hundred and seventy-eight dollars. Execution issued on this judgment on the 18th day of December, 1868, and was returned unsatisfied, by order of the plaintiff in the execution. Robson sued out a writ of error to the Supreme Court, with *supersedeas*. This judgment was affirmed by the Supreme Court, in May, 1870. On receiving the mandate of the Supreme Court, execution again issued out of the District Court of Colorado county, and on the 18th day of December, 1870, was levied on this land, which was sold under this execution on the first Tuesday in September, 1871; the plaintiff in the execution (appellee in this case) became the purchaser for the sum of three hundred and ninety dollars.

The appellant claims title under a purchase at a sheriff's

sale, made in November, 1869, under an execution from the County Court of Colorado county, on a judgment rendered December 8th, 1868.

It was contended in the court below, on the part of the appellant, that the judgment lien of the appellee Jones, under the judgment he recovered in September, 1868, was annulled by the execution by Robson of the *supersedeas* bond, on taking that case up to the Supreme Court.

Defendant below also objected to the plaintiff being allowed to prove publication of the sale of the land in a manner different from that pointed out in Sections 13 and 14 of the Act of August 13th, 1870, regulating public printing.

He also objected to the plaintiff's deed being read in evidence, on account of its having been executed by a person who was never elected sheriff of Colorado county, but was appointed to that office by the Governor under authority of the "Enabling Act" of 1870, which the counsel for the appellant held to be unconstitutional; and that, by reason of the unconstitutionality of the law, the person executing the deed was never the sheriff of Colorado county, and consequently the deed executed by him as such officer was a nullity.

The court below overruled the objections, and on the trial judgment was rendered in favor of the plaintiff, from which rulings and judgment defendant appealed.

*Foard, Thompson & McCormick,* for appellant. In the action of trespass to try title, the plaintiff must recover upon the strength of his own title, and not upon the weakness of his adversary's. Jones claimed to have a prior lien on the land in controversy by virtue of his judgment, and we hold that it was incumbent upon him to prove that Robson was the owner of the land in controversy at the date of his judgment. In an examination of the facts it will be seen that no testimony was offered upon this point. It has never been decided by our Supreme Court, that we are aware of, that the judgment in the District Court binds lands of the de-

36

fendant in the county, acquired after the rendition of the judgment.

The statute giving the lien confines it, in our opinion, to the lands owned at the date of the judgment, and such should be the policy of the law. Thus it has been decided in Ohio, Indiana, Iowa, and Mississippi. (See 4 Ohio, 92; 1 Ohio, 313; 1 Smith's Indiana, 100; 1 Green's Iowa, 311; 3 Miss., 484.) Thulemeyer contends that the sale of the land and the purchase thereof by Jones, under the *venditioni exponas*, was void. At the date of the sale the Act of the 13th August, 1870, regulating public printing, was in force. Section 12 of said act imposes these additional duties on the public printer, such as requiring him to publish in his official journal all judicial advertisements required to be published in his judicial district, including sheriffs' and constables' sales. This section further provides that the State printer shall file with his affidavit a copy of any judicial advertisement ordered by the court to be published, and which shall be filed and recorded by the clerk as the legal evidence of the publication of the same, to be read, or a certified copy thereof, in all the courts of law or equity, and no other evidence of such publication shall be required or allowed.

Section 13 empowers the Governor to designate certain journals in each judicial district, the journals so designated to be the official journals. The court judicially knows that the Governor did select such a journal for the 21st judicial district.

It must be held that the same duties were required of the publishers of these journals, selected by the Governor under Section 13, as of the public printer under Section 12, for we can hardly suppose that the Legislature intended to establish a different set of duties for the publishers of official journals; and that those duties imposed upon the public printer under Section 12, should only apply to one judicial district in the State.

Neither can we admit that it was only in those cases where the advertisement was ordered by the court to be published, that the copy of the advertisement, with the affidavit of the

publisher, should be held' as the only evidence that such publication had been made.

We think this provision as to the proof of publication applies to sheriffs and constables as well. The Legislature intended not only to establish official journals, but they also provided for their support and maintenance. Previous to this act, notices of sheriffs' and constables' sales were not required to be published at all in the newspapers, and Sections 14 and 15 show how particular the Legislature seemed to be in reference to the publication being made.

A proper construction of the act, taking Sections 12, 13, 14, and 15 together, would hold, not only that a sheriff's or constable's sale, made without a publication of the notice of the sale in the official organ of the judicial district, was void, but that the only evidence allowed to prove that such publication had been made was a copy of the advertisement and affidavit of the publisher, filed, or a certified copy thereof.

In this case, it will be perceived from the statement of facts, that no such copy and affidavit had been filed.

We would respectfully ask the court to construe this act in reference to the publication of notices of sales by sheriffs and constables, and what evidence will be allowed to prove that notice had been given.

Charles Schmidt, who, as sheriff, levied upon the land and sold it to Jones, was not the sheriff of Colorado county at the time of the levy and sale. His bond, in the statement of facts, shows that he was appointed by the Governor, and not elected by the people. Section 18, Article 5, of the Constitution of 1869, provides that one sheriff for each county shall be elected by the qualified voters thereof. The Legislature had no power to alter the provisions of this section, and deprive the people of their right to select their sheriff.

If the appointment of Schmidt was void and contrary to law, no power existed in him to confer title upon Jones to Robson's land.

Thulemeyer set up in his answer that Schmidt had not taken

the oath of office. A copy of Schmidt's bond is in the statement of facts, and no oath is indorsed thereon. Section 1, Article 12, of the Constitution of 1869, provides that all officers, before they enter upon the duties of their offices, shall take the oath of office.

Admitting that Jones had a lien on the land by virtue of his judgment, we contend that he released and waived his lien, so far as Thulemeyer is concerned, by ordering his first execution returned on the 23d day of January, 1869.

Thulemeyer having obtained judgment against Robson on the 6th December, 1868, at said date both parties had liens on the land. Jones having the senior judgment, his lien was preferable. C. J. Morrill, in Parker v. Nations, says : The surety is discharged when the creditor takes out execution against the principal, and waives it; and Justice Walker, in Jenkins v. McNeese, 34 Texas R., 191, says, that when the creditor takes out execution against the principal in a judgment, and then waives it and causes it to be returned unsatisfied, the security is thereby discharged, and cites the case in 33 Texas R. If the return of the execution releases the surety, it should have the effect to postpone the prior lien. The question is not between Robson and Jones, but between Jones and Thulemeyer, both of whom had liens on the land.

Such should be the effect of a return of the execution, otherwise Jones could have prevented Thulemeyer from the collection of his debt indefinitely, by issuing his executions from time to time, and ordering their return, or force him to sell Robson's land, subject to the lien in his favor, in which case Thulemeyer would have gotten nothing for his judgment, and Robson's property would have been sacrificed.

In the case of Riddle v. Bush, 27 Texas R., 677, Justice Moore says, a plaintiff, by ordering or consenting to the return of his execution without a sale, might well be held to have lost the benefit of his levy in cases of conflicting liens. It seems that this intimation of Justice Moore applies peculiarly to the case at bar.

But suppose we admit that Jones had a lien on the land, by

virtue of his judgment, which was not released, so far as Thulemeyer is concerned, by ordering the return of his execution, and how does the case stand then? The statute which authorizes the taking of causes to the Supreme Court by writ of error, concludes as follows: "Which bond shall have the force and "effect of a judgment against all the obligors upon which execu- "tion may issue in case of forfeiture." (Pas. Dig., Article 1495.) The construction of this provision of the statute was attempted by the Supreme Court in the case of Robertson v. Moorer, 25 Texas R., 442, in which case Justice Bell held that the mandate of the Supreme Court having been filed in the District Court before Robertson acquired title to the land, that the purchaser at the sheriff's sale had the best title. Albright, as whose property the land was sold by the sheriff, signed the writ of error bond, and afterwards purchased the land on the 23d of January, 1855, and sold it to Robertson on the 8th of October, 1855.

This opinion is extremely unsatisfactory. Albright did not own the land when he signed the writ of error bond, but acquired it afterwards. The opinion really holds that land acquired after the execution of the bond is held by the lien which arises upon the forfeiture of the bond, though Justice Bell decides the case entirely upon the ground that Albright was the owner of the land when the mandate of the Supreme Court was filed in the lower court.

In the subsequent case of Berry v. Shuler, 25 Texas R., Supplement, 147, the construction of this provision of the statute came up again before the Supreme Court, and Justice Bell rendered the decision. The facts of the case were as follows: Petty obtained judgment the 27th October, 1856, v. Bright & Calicoate; execution issued upon the judgment 29th December, 1856; the defendants sued out writ of error, the error bond dated 16th March, 1857, and approved 25th of March, which was signed by Calicoate. This judgment was affirmed in the Supreme Court 23d of October, 1857; a second execution issued on the affirmed judgment 21st January, 1858, against

Bright, Calicoate, and the sureties on the error bond; the land levied upon the 20th February, 1868, and sold first Tuesday in April, 1868, and purchased by Berry, Nix & Searcy. Calicoate did not own the land at the date of the judgment against him in the lower court, but acquired title thereto on the 19th January, 1857, which it will be borne in mind was prior to the execution of the writ of error bond. Calicoate sold the land to Shuler the 7th December, 1857. Justice Bell again held that the judgment of the Supreme Court affirming that of the District Court is the declaration of the forfeiture of the error bond, and further, that the lien which springs out of it relates back to the time of its execution, and binds the lands of the surety in the county where the original judgment was rendered from that time, and that said forfeiture of the bond also raised a lien upon the land of the principal, as he was one of the obligors upon the bond. "Inasmuch, then, as Calicoate acquired title "to the land on the 19th January, 1857, and the writ of error "bond executed and approved in March, 1857, the forfeiture "of the bond operated as a lien upon the land."

It will be perceived that in both of said cases the court raises the lien from the terms of the statute itself, and from that alone, and but for the statute the plaintiff would have been compelled to trust to the solvency of the sureties on the bond. In neither case does the court speak of the lien created by the original judgment, but only of the new lien created by the execution of the error bond upon its forfeiture by the Supreme Court. The peculiar provision in the statute relative to writ of error bonds is not found in the law authorizing appeals to the Supreme Court, and the affirmance of a judgment below by that court could only operate as a lien on the lands of the defendant from the date of the affirmance, or from the date of the filing of the mandate in the lower court. In Alabama it has been decided that when execution is suspended by suing out writ of error, and giving bond with surety, the lien of the original judgment is discharged, and also that a purchaser from the defendant in the judgment in such a case would acquire good title. We

presume the provision which exists in our statute does not exist
in that of Alabama. (4 Ala. Rep., 543 ; 7 Ala. Rep., 64.)

It appears to us that the decisions above are forced and con-
strained.   The statute says nothing about liens.   The forfeiture
of the writ of error bond which occurs when the judgment be-
low is affirmed in the Supreme Court, could have the force and
effect of a judgment without raising a lien from the date of the
execution of the bond.   The decisions appear to us to be con-
trary to public policy.   The wealth of our State consists chiefly
in her lands.   The policy of the State is to have those lands
settled and cultivated, whilst the effect of these decisions is to
impose secret liens upon great bodies of lands in every county,
which deters immigrants from buying and settling thereon.

But, giving to these decisions their full force and effect, yet
we still believe that the law of the case at bar is with the appel-
lant.   Jones had a lien by virtue of his judgment in the lower
court, which lien remained upon the land until the execution
of the writ of error bond, which we contend was on the day
when the same was delivered to the clerk, filed and approved,
to wit, the 30th June, 1869.   Upon the execution of the bond,
the lien of the original judgment was raised, and a new lien
given against all the obligors on the bond.   When this bond
was forfeited the lien related back, not to the date of judg-
ment, but to the date of the execution of the bond, and from
that date only can Jones have a lien upon the land in suit,
whilst Thulemeyer acquired a lien by virtue of his judgment,
which was never disturbed, and which ripened into a sale, by
force of his executions.   If such be not the law, then Jones
would have two separate and distinct liens, one dating from his
original judgment against Robson, and another against Robson
and the sureties on his bond, from the date of the execution of
the writ of error bond.

_J. T. & D. W. Harcourt_, for appellee.   The appellee,
Jones, contends that by virtue of his judgment against Rob-
son, rendered on the 24th day of September, A.D. 1868, he held

a general lien upon all said Robson's property situated in Colorado county, which embraced the land described in his petition. (See Section 1 of an act entitled " An Act to prevent " judgments from becoming dormant and to create and pre- " serve judgment liens," approved November 9th, A.D. 1866.) He further contends that no act of said Robson, or of the appellant Thulemeyer, could deprive him of his said lien; and that the same could only be lost or become dormant by a failure on his part to have an execution issued on said judgment for a period of ten years from the date of the issuance of the first execution. (See Section 3 of the above cited act, and Scogin v. Perry, 32 Texas, 30.) For the appellant it is contended that the execution of the writ of error bond, in the case of Jones v. Robson, had the effect to annul the lien of Jones acquired by virtue of his judgment against Robson, and to substitute therefor a new lien created by the execution of said writ of error bond.

To sustain this position he relies upon the provisions of Article 1493, and the latter clause of Article 1495, Pas. Dig. In answer to which we reply that Article 1493 was part of an act adopted on the 13th of May, A.D. 1846, when a judgment was not a lien upon the property of the defendant situate in the county where the judgment was rendered, except in the single instance of a recovery of land. (See Hartley's Digest, Articles 790 and 791.)

Again, the wording of the writ of error bond shows that the undertaking of the sureties was a collateral one; that their intention was only to become liable for the damages and costs incurred in the District and Supreme Courts, in the event that Robson failed to pay; and this intention will not be disregarded unless the stern and imperative requirements of some positive law demands it. There is no question but that, in accordance with the doctrine announced in Robertson v. Moorer, 25 Texas, 428, and Berry v. Shuler, 25 Texas Sup., 140, the sureties of Robson on the writ of error bond became liable in law for the debt of Jones against Robson in the event that

Robson failed to pay ; and that the judgment of affirmance by the Supreme Court in the case of Jones v. Robson would have given Jones a lien upon any property said sureties might have held in Colorado county ; which lien would relate back to the date of the execution of the writ of error bond.  But this is not the issue here.  It is whether a judgment creditor can be deprived of his lien upon the property of his debtor by the wrongful act of that debtor, and be compelled to look to irresponsible third parties for the collection of a just debt.  If it be true that the lien of Jones, acquired by virtue of the judgment rendered in the District Court in the case of Jones v. Robson, was vacated by the judgment of affirmance in the Supreme Court, which was a declaration of the forfeiture of the writ of error bond, and gave a lien to Jones upon any property Robson or his sureties might have owned in Colorado county at the date of the bond, it could only be true on the ground that the judgment of the lower court was merged in the judgment of affirmance.

In proof of the fact that such is not the case, we refer the court to the opinion of Judge Lipscomb in the case of Lewis v. Taylor, 17 Texas, 57, upon Article 5316, Pas. Dig.; the language of which is identical with that found in Article 1495, Pas. Dig., in reference to the force and effect of the judgment.  The judgment of affirmance was intended as a cumulative security to Jones.  This view of the case is supported by the opinion in the case of Cole's Adm'x v. Robertson, 6 Texas, 356, and Austin v. Towns, 10 Texas, 24.

But, to put an end to the controversy, and show that the judgment in favor of Jones, rendered in District Court in the case of Jones v. Robson, and the lien arising therefrom, was not vacated by the judgment of affirmance rendered in the Supreme Court, we refer the court to the case of Smith v. Kale, 32 Texas, 290, which is exactly in point, and conclusive of the matter.

Again, if we were to admit that the lien of Jones, acquired by virtue of his judgment against Robson in the District Court,

was vacated by the execution of said writ of error bond, it does not appear from the facts proven that the bond was executed after the date of appellant's judgment against Robson. And if this was the case, it devolved on appellant to show the fact affirmatively. The bond bears date —— day of ——, A.D. 1868. There was no proof of the date of appellant's judgment against Robson. There was proof that he recovered a judgment in the County Court of Colorado county, on the 8th of December, A.D. 1868, but not against Robson.

As to the errors assigned in reference to the evidence of publication of the notice of sale under which Jones purchased the property in dispute, we will only say that we can see no force in them; that even if the sheriff had failed to comply with the provisions of Section 14 of the "Act regulating pub-"lic printing," approved August the 13th, A.D. 1870, in the sale to Jones, that his title to the property would not be affected thereby; that the obvious intention of the law, to be gathered from the language used, was to make the sheriff who should disobey the law responsible in damages to any party who might sustain an injury from his neglect of duty; and the liability of the sheriff could be fixed by a suit on his bond.

The fifth and sixth assignments of error attack the official character of the sheriff at the dates of the levy and sale of the land under which appellee bought. Charles Schmidt was the *de facto* Sheriff of Colorado county at the date of said levy and sale, and his official acts will be respected by the courts, even if it were true that he was not the *de jure* sheriff of said county at that time. "A person acting as an officer, under color of a " commission, is *de facto* such officer, until ejected by a pro-" ceeding having that object directly in view; and his author-" ity cannot be questioned in a collateral way. His official " acts, until ejected, are valid." (Aulanier *v.* The Governor, 1 Texas, 653.) As to the laches of Jones, if he had been guilty of any, it was a matter for the defendant in the execution, Robson, to take advantage of, and not for the appellant in this case. (See Hawley *v.* Bullock, 29 Texas, 217.)

The judgment of the court below was correct and in accordance with the law and the evidence. " Every presumption is " with the judgment rendered in the court below, and the party " who seeks to reverse it takes upon himself the burden of " showing that error was committed, and in what it consists." (Borden v. Houston, 2 Texas, 594 ; Punderson v. Love, 3 Texas, 60 ; Curry v. York, 3 Texas, 357.)

WALKER, J.  The title of Jones, the appellee in this case, is unquestionably good.  The *supersedeas* bond and appeal to the Supreme Court did not vacate his lien on the land owned by Robson, within the county, at the time of the rendition of the judgment.  Smith v. Kale, 32 Texas, 290, is a case in point with the one at bar.

A question has recently been presented before this court and very ably argued, in which it is contended on the one side that judgment liens do not attach to after-acquired property.  My own opinion on this subject was not well settled until since the recent argument of the question at bar.  The same question is raised in this case by appellant's counsel, and we are now forced to the conclusion that the law is with the appellee, and that if Jones' judgment was rendered before Robson acquired the property in controversy, it nevertheless attached to this property, and would thereby give him a preferable lien.

The supposed errors in the proceedings under which the property was sold to Jones, we do not think can be urged against his title.  Sheriffs who disobey the law of August 13th, 1870, may be liable in damages to an injured party.  We have never held the Enabling Act unconstitutional.  The acts of sheriffs *de facto* cannot be questioned in this manner.  Their official acts must be held good so long as they are suffered to remain in office, and until the office is vacated by a direct proceeding for that purpose.  (See Aulanier v. The Governor, 1 Texas, 653.)

The judgment of the District Court is affirmed.

Affirmed.