JOHN F. GORDON *v*. THE STATE.

1. APPEAL.—A sheriff removed by the district judge on motion of the district attorney can appeal from the order removing him.

2. SHERIFF, REMOVAL OF, BY DISTRICT JUDGE.—The sheriff is entitled to notice of the charges against him, and the charge must specify some act or omission since his election showing his unfitness for the office.

3. DISQUALIFICATION TO ELECTION AS SHERIFF.—Prior to the act of March 15, 1875, disqualifying certain persons (sheriffs, &c.) from exercising the functions of offices from which they have been removed, the removal by the district judge of a sheriff was no obstacle to his election to and holding the same office from which he had been removed.

APPEAL from Guadalupe. Tried below before the Hon. John P. White.

The main points in the above cause may be summed up as follows: W. H. Burgess, Esq., as district attorney, &c., on the 26th of December, 1874, the last day of the Guadalupe District Court, filed a motion against appellant to remove him from the office of sheriff of Guadalupe county. Gordon asked time to employ and consult counsel, and the court adjourned until that evening, when the case being called, Gordon's counsel claimed that he had not been served with a notice or copy of the charges against him, whereupon the court adjourned until the following Wed-

nesday, and Gordon was served with a copy of the rule to show cause why he should not be removed from office.

On Wednesday Gordon, by his counsel, objected to being tried in chambers, but his objection being overruled, he was by an order removed from office.

Another election having been ordered by the proper authority, Gordon was, on the 30th of January, elected sheriff by the voters of Guadalupe county, and shortly thereafter duly commissioned by the Governor as sheriff. At the next term of the Guadalupe District Court, without notice to Gordon, the court entered an order for his removal, on the ground that he was not eligible for the office after removal during the term for which he was elected; and if eligible, he was removed for the causes for which he had been removed previous to the election of January 30, 1873.

Gordon afterwards appeared and moved to set aside the order removing him, because (1) he had no notice of any charge against him; (2) he had no opportunity of explaining or answering the causes assigned for his removal; (3) no cause was alleged for his removal which existed after the date of his election and commission as sheriff; and (4) his former removal did not render him ineligible to hold the office when re-elected by the people.

This motion was overruled, and exceptions taken to the action of the court, and Gordon has appealed.

The Attorney General for the State filed a motion to dismiss the appeal for want of jurisdiction and for want of sufficient appeal bond.

*W. E. Goodrich*, for appellant.

The Supreme Court of Texas has held in several cases that it had revisory jurisdiction over cases of this kind. (Davis *v*. The State, 35 Tex., 121; *Ex parte* King, 35 Tex., 657; Stewart *v*. The State, 37 Tex., 576.)

The Supreme Court of West Virginia has held the same view.   (3 West Va., 367.)

In Keenan v. Perry, 24 Tex., 260, the court say: "But it is insisted for appellee that the removal is inoperative because the Governor did not assign the causes of the removal. The answer to this is, that the law did not require him to assign the causes. * * * The law makes no provision for ascertaining the existence of the causes, or for revising the action of the Governor by any other authority or tribunal." And further down on same page it is said: "As no court or tribunal is clothed with authority by the law to revise the action of the Governor in removing the officer, and his decision as to the existence of the ·causes is not elsewhere examinable, it is not perceived what useful purpose would be subserved by assigning the particular causes upon which he acted. The authority to *require* it would imply a *power* of *revision* which is not given by law." And again on page 264: "It is only said that the officer shall continue in office during the prescribed period, unless sooner removed for specified causes, not that the causes shall be assigned. If that had been intended as a precedent to the removal, or as a limitation or restriction upon the removing power, it would have been easy to have so expressed it."

The Constitution requires that the cause for removal be spread upon the records of the court, and without doubt for the obvious reason that the cause may be seen and known, and, if necessary, revised and corrected by appeal. (Davis v. The State, 35 Tex., 124.)

The appellant assigns as errors his being removed from office without being allowed a hearing, and his being removed for causes alleged to have existed previous to his election to the office and to his being commissioned as sheriff by the Governor, and for which he had been before tried.

The order of removal of March 5, 1875, shows that he was not given a hearing, and that his removal was for causes which existed previous to his election, and that he

had once before been tried and removed from office for the identical causes there set out.

Was Gordon entitled to be heard on the charges, or is the power in the District Court to remove an arbitrary one? Our own court say that the power is not an arbitrary one. (See 35 Tex., 121, 657; 37 Tex., 576.)

It is a cardinal principle in the administration of justice that no man can be divested of his rights until he has had an opportunity of being heard. (7 How., Miss., 127; 1 Hill, N. Y., 139; 4 Hill, N. Y., 146; 1 Curtis, 325.) And many other authorities could be cited to the same effect.

Our Bill of Rights, section 16, says: "No citizen of this State shall be deprived of * * * property, privileges, * * * or in any manner disfranchised, except by due course of the law of the land."

Where the sheriff fails to return an execution, make a levy, or advertise and offer for sale property levied on, and even where he fails or refuses to pay over money collected by him under execution, when demanded by the plaintiff in execution or by his attorney, he is entitled to three days' previous notice before the motion against him can be tried. (Paschal's Dig., arts. 3781, 3796, 5106.)

Yet here he was turned out of office without notice, without being allowed a hearing, and for causes upon which he had previously been tried; and every one of which, as the order of removal itself shows, was of date previous to his election by the people and of his being commissioned by the Governor.

Though every charge against appellant may be true, yet not one of them goes to show that he is not competent to discharge the duties of the office, and they only amount to negligence—gross negligence, it may be—but only negligence; and he doubtless would, after his removal from and re-election to the office of sheriff, have corrected these faults had he been allowed to hold his office.

True, the judge, in the first order of removal, says that

Gordon is unfit to longer hold and exercise the office of sheriff; but he preludes this by saying it is for the causes set out in the motion against him.

Did the removal of Gordon the first time render him ineligible to the office?

The only power in the judge to remove is derived from section 41 of Art. V of the Constitution.

The power is to *remove* for causes spread upon the minutes; not to remove and declare ineligible. This is extraordinary power, and the process summary. Is the power to remove to carry with the greater punishment a disqualification to hold the office?

We believe that criminal laws and laws *quasi* criminal are strictly construed, and the penalty never construed to be greater than that which the statute prescribes. (Forshey v. Railroad Company, 16 Tex., 526; Frazier v. Moore, 11 Tex., 759.)

The same rule of construction applies to summary proceedings in civil actions. I will only cite the rule in cases of attachments, where the affidavit for attachment must be positive as to the ground, and not that the affiant believes it, though it may be impossible for him to know that the party whose property it is proposed to attach is secreting or about to secrete the same for the purpose of defrauding his creditors. (Chevallier v. Williams, 2 Tex., 243.)

Our Constitution, Art. III, sec. 14, says: "No person shall be eligible to any office, State, county, or municipal, who is not a registered voter in the State."

The oath of office, section 1, Art. XII, places further restrictions upon the right to hold office.

And section 2, Art. XII, provides that "laws shall be made to exclude from office, &c., those who shall hereafter be convicted of bribery, perjury, forgery, or other high crimes."

Gordon was eligible, as far as the Constitution provides, unless the court should hold that by reason of his having

been removed by the judge he becomes ineligible to hold
the office.

*George Clark, Attorney General,* for the State.

See Const., Art. V., sec. 18; Keenan *v.* Perry, 24 Tex.

Attention is also called to the fact that the appeal is from
the *second* order of removal made by the judge of his own
motion. No complication as to the State being made a
party can therefore arise, and the appeal is wholly *ex parte.*
It is in no sense a *suit,* nor is the order of the court below
a *judgment* for absence of *parties.*

*Terrell & Walker,* also for appellant, argued the question
of jurisdiction, citing Davis *v.* The State, 35 Tex., 122;
*Ex parte* King, 35 Tex., 657; Jackson *v.* The State, 21
Tex., 673; Keenan *v.* Perry, 24 Tex., 253; 1 Burns' Jus-
tice, 361, 364; 1 McKenney's Jus., 353; Rex *v.* Little, 1
Bur., 613; Rex *v.* Cordorn, 4 Bur., 2279; Taylor *v.* Porter,
4 Hill, 146; Story on Const., sec. 1789; *Ex parte* Hey-
fron, 7 How., (Miss.,) 127; *Ex parte* Ireland, 38 Tex.,
344.

The argument on the main question is given in full.

No valid cause for removal was spread upon the min-
utes of the court, as required by the Constitution, and the
judgment removing the officer should be reversed.

We will not discuss whether the first order removing
the officer, made as it was in vacation, effected the object
intended or not. Until the cause of removal is spread
upon the minutes of " the court" it would seem that the
officer could not be removed, and we cannot see how a
*cause* ascertained in chambers in vacation could be spread
upon the minutes of a court not then in session. But be
this as it may, Gordon acquiesced in the order and ap-
pealed to the people, who are supposed to be cognizant of
all the facts, and who sustained him by his re-election. It
is not pretended anywhere that after this any new cause

for removal occurred, but at the term following his election he was removed by an order of the judge without notice of any new accusation, without the privilege of being heard, and for the same cause, antedating his election, for which he was first removed.   If this may be done, article V, section 18, which secures to the people the right to elect their sheriffs, becomes a mockery and a delusion.   Why make him elective if a judicial veto may nullify the popular wish for matters which existed before his election, and which must have been considered by the people when they elected him?   The cause which can authorize a removal must arise after an election, for in no other way can we harmonize the constitutional right of the people to elect with the power conferred on the judge to remove for cause.   We respectfully submit that any other construction of the powers of the district judge would create a depository of irresponsible power most dangerous in a free government.   Once give to the judges the power to remove their sheriffs and clerks for causes which the people have considered at the ballot-box, and what is the right to elect their sheriff worth?   The judge is not elected by nor responsible to the people directly, and if he may thus practically ignore their choice in removing one who it is not even pretended has given cause of complaint since his election, then he may remove for any cause which personal dislike, caprice, or prejudice may suggest.   If this can be done, was it not a solemn mockery to write in the Constitution that the sheriff should be elected by the people?   If the district judge *without cause* may thus exercise these startling powers, with no right in this court to revise his action, then we have in Texas thirty-five men who, in vetoing the act of the people in electing their sheriffs and clerks, are supreme and irresponsible.   No one of them derives his power directly from the people, and it would seem to require something more than judicial construction, in the absence of positive law, to satisfy the understanding

that such extraordinary power of vetoing the popular will can thus be exercised.   When the judge spreads upon the minutes of the court, as was done here, a cause for removal not known to the law existing prior to the election, and which, as we have said, was considered by the people when they elected their officer, what becomes of the constitutional right of the people to elect?

The question is so important, the claim of irresponsible power so startling, that the actors themselves dwindle into nothingness before its magnitude.

We know of but one precedent in all English and American history for the claim of power here asserted.   We refer to the contest between John Wilkes, who, backed by the public sentiment of England, maintained a successful contest against the king, ministry, and Parliament.   Expelled from the House of Commons he was twice re-elected a member from Middlesex, and as often expelled, because it was claimed by the House that his first expulsion rendered him ineligible.   Though confessedly a bad man, this claim of arbitrary power in the House of Commons to *veto* and destroy the right of the people to elect their member, for causes they themselves had considered at the ballot-box, so shocked the public mind that Wilkes was, on a change of ministry, again returned, and saw *expunged* from the journals of the House the resolutions of expulsion. The right of the people to elect their public servants existed before constitutions were formed, and the claim we have been considering is only the evidence that in the case of a sheriff they have not surrendered it.   The power conferred on the judge in the same clause to remove is extraordinary, and being in derogation of common right must, tested by every precedent, be strictly pursued.

In this case there has been an effort to remove the officer in a proceeding which the judge determined at chambers, to which he was not afterwards a party, and for a cause not recognized by law, for if the officer be not rendered

infamous by crime, no cause which existed before his election can furnish even a pretext for his removal. The denunciations of Junius, leveled at the claim of Parliament to expel for causes antedating the election of a member, wrought a proper effect upon the English mind, and the final indorsement of his views by Parliament and the British people should excuse us from arguing against such a claim of power not since asserted until now.

The language of Junius in that memorable controversy may well be applied to the courts, viz: "We can never be really in danger until the forms of law are made use of to destroy our civil and political liberties; until the courts forget their trusts by contributing to establish new principles of government, and employing the very weapons committed to them to stab the constitution."

What connection the passage of the recent act of the Legislature, passed since the proceeding complained of, and which now renders a sheriff who has been removed by a judge afterwards ineligible, had with the present case, we know not, but we hazard nothing in saying that the civil rights of the citizen *should not depend on the will or caprice of any one man.* That act is prospective in its operation and cannot affect this case. It has no prototype, and we hazard nothing in saying that it will never furnish a precedent for other legislative bodies.

We are far from attacking the motives of the judge of whose action we complain. We believe they are above reproach, and that his action was dictated by what he thought to be a conscientious regard for official duty, but we think the precedent set by him most dangerous and unwarranted by law.

GOULD, ASSOCIATE JUSTICE.—Former decisions of this court have given a construction to the clause of the Constitution making sheriffs " subject to removal by the judge of the District Court for said county for cause spread upon

the minutes of the court." (Constitution, sec. 18, Art. V; Davis *v.* State, 35 Tex., 118; *Ex parte* King, Id., 657.)

It has been held, and we think rightly, that this power of removal is not absolute or arbitrary, either as to the manner in which or the causes for which it may be exercised. The sheriff is entitled to notice of the charges against him and to an opportunity to be heard in his defense. The fact of his election is conclusive of his right to the office, unless some subsequent cause justify his removal. "General allegations of incompetency" or unfitness constitute no sufficient cause. Some official delinquency, or, we will add, some act or default or occurrence since his election, showing his unfitness for the office, must be alleged against him. Where a removal is made irregularly or for insufficient cause the order or judgment is subject to be revised on appeal. These principles are substantially laid down in the cases referred to, and are believed to give the proper construction to this clause of the Constitution, giving some weight to every part, and at the same time, between two constructions, inclining to that in harmony with other parts of the Constitution and with the rules of the common law. (Cooley's Const. Lim., 58–60; Bennett *v.* Ward, 3 Caines, 259.)

As presented in the record, the order of removal appealed from, made March 5, 1875, was without notice to the sheriff, and for causes anterior to the election and commission under which he then held his office. It was therefore erroneous, and must be reversed.

The validity of the previous removal in vacation is not a question before us for decision. It was acquiesced in, a new election had, and Gordon was re-elected and again commissioned. The order appealed from does not assume to be made in pursuance of the motion and notice on which the removal in vacation was founded, but is based on the validity and completeness of the previous removal. The proposition that by this previous removal Gordon was ren-

dered ineligible to the office during the balance of his original term, is unsupported by anything in the Constitution or in the law as it was at the time the order was made. The act of March 15, 1875, entitled "An act to disqualify certain persons from exercising the functions of offices from which they have been removed," is subsequent in date to the order of removal, and cannot affect this case. The disability to hold office is part of the penalty affixed by our statutes to certain infamous crimes. (Paschal's Dig., arts. 1666, 1936.) It is not to be imposed on any citizen except by authority given by law.

The motion to dismiss for want of jurisdiction is overruled, and the judgment or order of removal made on March 5, 1875, is reversed and the prosecution dismissed.

REVERSED AND DISMISSED.