

# The Attorney General of Texas

August 9, 1983

JIM MATTOX
Attorney General

Supreme Court Building
P. O. Box 12548
Austin, TX. 78711- 2548
512/475-2501
Telex 910/874-1367
Telecopier 512/475-0266

1607 Main St., Suite 1400
Dallas, TX. 75201-4709
214/742-8944

4824 Alberta Ave., Suite 160
El Paso, TX. 79905-2793
915/533-3484

1220 Dallas Ave., Suite 202
Houston, TX. 77002-6986
713/650-0666

806 Broadway, Suite 312
Lubbock, TX. 79401-3479
806/747-5238

4309 N. Tenth, Suite B
McAllen, TX. 78501-1685
512/682-4547

200 Main Plaza, Suite 400
San Antonio, TX. 78205-2797
512/225-4191

An Equal Opportunity/
Affirmative Action Employer

Honorable Gary Thompson
Chairman
County Affairs Committee
Texas House of Representatives
P. O. Box 2910
Austin, Texas    78769

Honorable Brad Wright
Chairman
Committee on Public Health
Texas House of Representatives
P. O. Box 2910
Austin, Texas    78769

Opinion No. JM-55

Re: Whether an outgoing board of directors of Lavaca Hospital District may take any action after the annual election and prior to canvassing votes for the election

Dear Representative Thompson and Representative Wright:

You have inquired about the validity of actions taken by the board of directors of the Lavaca Hospital District at a meeting held on April 4, 1983. This hospital district was created by House Bill No. 509, enacted in 1975. Acts 1975, 64th Leg., ch. 16, §1, at 23. See V.T.C.S. art. 4494q. The essential facts, as set forth in a letter from Representative Wright, are as follows:

> The Lavaca Hospital District is governed by an elected board of directors of seven members who serve for two year staggered terms; four of which are elected in odd-numbered years, and three are elected in even-numbered years. The question posed herewith involves actions on old business that were taken by the board of directors on April 4, 1983. The April 4 board actions on old business included the approval of minutes and a resolution that was the culmination of several years of study and effort by the then-current board, earlier boards of directors, and the board's physician recruitment committee. The board voted (5 for, 1 against, 1 abstaining) to authorize the making of a recruitment offer to a physician needed by the community who had been recruited for some time to come to Hallettsville. . . .

Any business transacted by the Lavaca Hospital District according to the hospital's legislative enactment, must be by a vote of at least 5 to 2. Article 4494q, ch. 16 (H.B. No. 509, 64th Legislature, Regular Session, 1975) V.T.C.S. The question about the legality of the business conducted by the board on April 4 has been raised by three new board members. The business transacted by the old board about which questions have been raised was conducted on April 4, 1983, after the election of new officers but prior to the canvassing of the votes, the qualification of the newly elected board members and their swearing in, which occurred at the April 4 meeting after old business was transacted.

The question presented is as follows:

Was the action by 5 out of 7 incumbent members of the Lavaca Hospital District on April 4, 1983, in conducting old business which consisted of the approval of minutes from the previous meeting, and the approval of an offer to be made to recruit a physician to practice in the community, a lawful or an unlawful exercise of their power as directors when the action was taken after the election of three new board members but prior to their being qualified, the votes being canvassed, and their being sworn in as new board members?

We conclude that this action was legally taken.

Article XVI, section 17 of the Texas Constitution, the so-called "holdover" provision, provides that:

All officers within the State shall continue to perform the duties of their offices until their successors shall be duly qualified.

As this office said in Attorney General Opinion V-760 (1949):

The purpose of [this] constitutional provision is to insure, in so far as possible, that there be no cessation in the functions of government. It continues the officer in the office with all the powers incident thereto until his successor has duly qualified. Jones v. City of Jefferson, 66 Tex. 576, 1 S.W. 903; State v. Jordan, 28 S.W.2d 921 (Civ. App. 1930, writ dism'd); 34 Tex. Jur. 373, Officers, Sec. 31; 46 C.J. 968, Officers, Sec. 110; annotation 74 A.L.R. 486.

See also, e.g., Pyote Independent School District v. Estes, 390 S.W.2d 3 (Tex. Civ. App. - El Paso 1965, writ ref'd n.r.e.); Attorney General Opinions M-857 (1971); V-868 (1949).

The directors of the Lavaca Hospital District are clearly "officers" within the meaning of article XVI, section 17. Under this constitutional provision, officers who hold over until their successors have duly qualified are de jure officers. Attorney General Opinion M-857 (1971) and authorities cited therein. Thus, until their successors duly qualified for office on April 4, the directors of the Lavaca Hospital District who were not reelected on April 2 were de jure officers and were therefore legally entitled to exercise all of the rights and perform all of the duties associated with their office. In our opinion, these rights and duties clearly include the right to take the actions in question here.

It has been suggested that the actions of the board at the April 4 meeting were illegal because section 4(c) of House Bill No. 509 provides that the term of office of each director shall automatically expire on the date on which the director's successor is elected. It has been argued, in other words, that section 4(c) provides that the term of office of each director shall run from election day to election day, and, therefore, that after April 2, the board "cease[d] to function as a decision making body and exist[ed] only to fulfill its ministerial function of canvassing the votes and declaring the results of the election." Brief of Lavaca County Attorney, at p. 2. We disagree.

Section 4(c) does provide for one or two year terms for each original director of the district. These terms expired on the first Saturday in April of either the first or second year following the creation of the district. Section 4(c) also provides that the original directors' "[s]uccessors shall be elected. . . for two-year terms." It is therefore clear that the terms of office of the directors who were not reelected on April 2 ended on that date.

It does not follow, however, that after April 2, these directors were powerless to do anything other than canvass the votes and declare the results of the April 2 election. To accept this argument would be to conclude that for approximately two days, there was an insufficient number of directors clothed with the power to take official action. If this were true, the board could not have governed the district during that two day period -- even if, during that interim, an emergency had arisen and official action had become necessary.

The purpose of article XVI, section 17 of the constitution obviously was to cover such situations as this. This provision was designed to ensure an orderly transition and to avoid an interruption in governing authority. Even though section 4(c) of House Bill No. 509 provides that the terms of office of directors of the hospital district officially run from election day to election day, directors

who are not reelected continue to serve as de jure officers until their successors have duly qualified for office. Put another way, section 4(c) cannot, in light of article XVI, section 17, be read literally to create a hiatus in governing authority.

It has also been suggested that the actions of the board at the April 4 meeting were illegal because, under the Election Code, the only function which the board could perform at that meeting was to canvass the votes and declare the results of the April 2 election. Again, we disagree.

The Election Code does require the board of directors to meet on "the Monday next following the day of election or sooner" to, inter alia, "open the election returns and canvass the result." Elec. Code art. 8.34. See also Elec. Code art. 8.29a. However, neither these provisions of the code nor any other statute or bylaw to which our attention has been directed stipulates that this is the only action that may legally be taken at that meeting. Such a construction, moreover, would create the same problem discussed above: a period of time, albeit a short one, would exist during which the board could not legally do anything other than deal with election matters. As we have noted, article XVI, section 17 exists to insure that no such time period can exist.

In summary, we conclude that (1) no statute or bylaw of which we are aware provides that, at the April 4 meeting, the board could only canvass the votes of the April 2 meeting and declare the results of that election; (2) if such a provision did exist, its validity would be dubious in light of article XVI, section 17 of the constitution; (3) although the terms of office of the directors who were not reelected on April 2 officially expired on that date, these directors continued to serve as de jure officers until their successors qualified for office on April 4; and therefore (4) the actions taken by the board on April 4 were legal.

### S U M M A R Y

The directors of the Lavaca Hospital District who were not reelected on April 2 did not act illegally in considering old business of the district at a meeting held on April 4 prior to the qualification of their successors as directors.

Very truly yours

JIM MATTOX
Attorney General of Texas

TOM GREEN
First Assistant Attorney General

DAVID R. RICHARDS
Executive Assistant Attorney General

Prepared by Jon Bible
Assistant Attorney General

APPROVED:
OPINION COMMITTEE

Rick Gilpin, Acting Chairman
Jon Bible
David Brooks
Colin Carl
Jim Moellinger