# TEXAS COURT OF APPEALS, THIRD DISTRICT, AT AUSTIN

## NO. 03-06-00369-CR

**Crae Robert Pease, Appellant**

**v.**

**The State of Texas, Appellee**

### FROM THE COUNTY COURT AT LAW NO. 7 OF TRAVIS COUNTY
### NO. 720828, HONORABLE WILLIAM E. BENDER, JUDGE PRESIDING

## M E M O R A N D U M   O P I N I O N

The jury convicted Crae Robert Pease of the offense of reckless driving. *See* Tex. Transp. Code Ann. § 545.401(a) (West 1999). Punishment was assessed at 30 days in jail and a $200.00 fine, but imposition of the sentence was suspended and Pease was placed on community supervision for two years. In three points of error, Pease asserts that the jury charge authorized a non-unanimous verdict, challenges the legal and factual sufficiency of the evidence, and claims that his conviction is "null and void" because the trial judge was not qualified. We affirm the judgment.

## BACKGROUND

The jury heard evidence that in the early morning hours of November 3, 2004, Officer Kelly Gutierrez of the Austin Police Department was driving eastbound on William Cannon Drive in south Austin when she witnessed a red truck speed past her patrol vehicle. Gutierrrez testified that the truck's high rate of speed caused her vehicle to shake and sway. Gutierrez then observed the

truck maneuver into the middle lane of traffic, forcing another car to swerve evasively into the right-hand lane to avoid being rear-ended. Gutierrez turned on her overhead lights and siren and sped up to catch the truck. She observed that the truck was going 80 miles per hour in a 40-miles-per-hour residential zone. The driver of the truck, who was later identified as Crae Pease, did not pull over. Gutierrez testified that in her experience, drivers who refuse to pull over are "usually DWI." After being pursued for about half a mile, Pease turned right onto a "small, narrow" neighborhood street through which only one car could pass through at a time. Gutierrez had "no idea" where Pease was leading her.

Gutierrez testified that Pease finally turned into a steep driveway and parked. A female passenger got out of the truck, ignored Gutierrez, and walked inside the house. Pease also exited the truck, looked at Gutierrez but "completely blew her off" and started walking towards the house. Gutierrez asked Pease to show her his hands but he refused, continuing to ignore her. At this point, fearing that Pease might have a weapon, Gutierrez grabbed him, threw him against the truck, and put his hands behind his back. Gutierrez placed Pease under arrest for reckless driving. Gutierrez explained that she could smell "extreme amounts of alcohol" on him and had to hold him against the truck because of how much he was stumbling and swaying. Gutierrez testified that Pease's speech was slurred, and that he resisted her efforts to lead him towards her vehicle: "He kept on going against the handcuffs, I was trying to maneuver him towards my vehicle, he kept on stumbling, kept on leaning back, trying to stop walking, planting his feet, he kept on dragging his feet." Finally, Gutierrez was able to get Pease to her vehicle. A videotape from Gutierrez's patrol car recorded the incident from the time Pease turned into the neighborhood until he was placed in

2

the patrol car, and the tape was admitted into evidence and played for the jury. Finally, Gutierrez testified that Pease refused a breath test once they arrived at the police station.

Pease was charged by information with reckless driving. The information alleged various ways in which Pease engaged in this conduct: "by driving 80 miles per hour in a 40 mile per hour zone, and by passing a police vehicle at an extremely high rate of speed, and by almost striking another vehicle while traveling at a high rate of speed, and by disregarding patrol car overhead lights for several blocks, and by consuming alcohol and operating a motor vehicle."

The allegations in the jury charge mirrored the allegations in the information, except that each allegation was submitted disjunctively to the jury. In other words, following the first allegation of driving 80 miles per hour in a 40-miles-per-hour zone, each subsequent allegation was preceded by an "and/or" conjunction. The jury convicted Pease of reckless driving and the county court at law placed him on community supervision. This appeal followed.

## DISCUSSION

### Jury unanimity

In his first point of error, Pease asserts that by submitting disjunctively the various allegations in the jury charge, the county court at law allowed for a non-unanimous verdict.

The right to a unanimous jury verdict is constitutionally and statutorily guaranteed. *See* U.S. Const. amends. VI, XIV; Tex. Const. art. V, § 13; Tex. Code Crim. Proc. Ann. arts. 36.29(a), 37.03 (West 2006). The unanimity requirement ensures that each juror is convinced beyond a reasonable doubt that the prosecution has proved each essential element of the offense. *Jefferson v. State*, 189 S.W.3d 305, 311 (Tex. Crim. App. 2006). But while jury unanimity is

3

required as to the essential elements of the offense, if the statute in question establishes different modes or means by which the offense may be committed, unanimity is generally not required as to the alternate modes or means of commission. *Id*. Ordinarily, then, the first step in a unanimity challenge is an examination of the statutory language to determine the elements of the crime and whether the legislature has created a single offense with multiple or alternate modes of commission. *Id*.

The statutory language of the offense of reckless driving is straightforward: "A person commits an offense if the person drives a vehicle in wilful or wanton disregard for the safety of persons or property." Tex. Transp. Code Ann. § 545.401(a). The statute does not specify any particular manner or means of committing the offense, probably because there are countless ways in which a person can drive a vehicle in wilful or wanton disregard for the safety of persons or property, including each of the ways alleged in the information. We conclude that the language of the statute indicates that the legislature intended to penalize the act of reckless driving, regardless of the specific ways in which that act may be committed. Therefore, we hold that the unanimity requirement goes to the act of driving a vehicle in wilful and wanton disregard for the safety of persons or property, while the jury need not be unanimous on the manner or means of committing the act. *See Ngo v. State*, 175 S.W.3d 738, 746 n.27 (Tex. Crim. App. 2005).

Pease attempts to compare his case to *Stuhler v. State*, 218 S.W.3d 706 (Tex. Crim. App. 2007), and *Ngo v. State*, cited above. However, these cases are inapplicable here. In *Stuhler*, the defendant was convicted of the offense of injury to a child pursuant to section 22.04(a) of the penal code. *See* Tex. Penal Code Ann. § 22.04(a) (West Supp. 2006). However, the defendant was

4

charged with both causing "serious bodily injury" to a child pursuant to subsection (a)(1), and causing "serious mental deficiency, impairment, or injury" to a child pursuant to subsection (a)(2). The allegations were submitted disjunctively to the jury. The court affirmed the intermediate court's reversal of the conviction, holding that "the Legislature intended the separate results spelled out in the various subsections of the statute to be elemental and thus required jury unanimity." *Stuhler*, 218 S.W.3d at 719.

Similarly, in *Ngo*, the State sought to prove that the defendant committed one credit card abuse offense by proving three different criminal acts, occurring at three different times, and in three different ways: (1) stealing the victim's credit card; (2) receiving the victim's card; or (3) fraudulently presenting the card with intent to obtain a benefit. *Ngo*, 175 S.W.3d at 744. These three theories were submitted disjunctively to the jury, and the jury returned a general verdict. The court held that stealing, receiving, and presenting a credit card were each separate offenses, and submitting them to the jury disjunctively violated the unanimity requirement. *Id*. at 749.

In contrast to *Stuhler*, there are no "separate results" or "various subsections" in the reckless driving statute. In contrast to *Ngo*, there is only a single offense charged in this case—driving a vehicle in wilful or wanton disregard for the safety of persons or property. The various allegations in the charge were simply different manners and means of committing that offense, and the jury did not have to unanimously agree on them. We overrule Pease's first point.

**Legal and factual sufficiency**

In his second point, Pease asserts that the evidence is legally and factually insufficient to support his conviction. Pease intertwines this point with his previous point, arguing that if the

5

State is allowed to introduce evidence "to support such a laundry list of prejudicial acts alleged in the information, the State has the burden of proving all the acts in totality in order to support a conviction."[1]

First, we note that when alternate manners and means of committing an offense are submitted to the jury, it is appropriate for the jury to return a general verdict for that offense if the evidence supports a conviction under any one of them. *Marinos v. State*, 186 S.W.3d 167, 175 (Tex. App.—Austin 2006, no pet.) (citing *Kitchens v. State*, 823 S.W.2d 256, 258 (Tex. Crim. App. 1991)).

Furthermore, we find that there is legally and factually sufficient evidence of each of the manners and means of reckless driving alleged by the State. When there is a challenge to the sufficiency of the evidence to sustain a criminal conviction, the question presented is whether a rational trier of fact could have found the essential elements of the offense beyond a reasonable doubt. *Jackson v. Virginia*, 443 U.S. 307, 324, 99 S. Ct. 2781, 61 L. Ed. 2d 560 (1979) (legal sufficiency); *Griffin v. State*, 614 S.W.2d 155, 158-59 (Tex. Crim. App. 1981) (legal sufficiency); *Johnson v. State*, 23 S.W.3d 1, 11 (Tex. Crim. App. 2000) (factual sufficiency). In a legal sufficiency review, all the evidence is reviewed in the light most favorable to the verdict; it is assumed that the trier of fact resolved conflicts in the testimony, weighed the evidence, and drew reasonable inferences in a manner that supports the verdict. *Griffin*, 614 S.W.2d at 159 (citing

---

[1] Pease also asserts under this point that there is a variance between the evidence offered at trial and the allegations in the charging instrument. *See Gollihar v. State*, 46 S.W.3d 243, 246 (Tex. Crim. App. 2001). However, Pease does not identify what this variance is nor does he explain how the variance is material to his case. Therefore, we find this argument to be inadequately briefed. *See* Tex. R. App. P. 38.1(h).

*Jackson*, 443 U.S. at 318-19).  In a factual sufficiency review, we view the evidence in a neutral light and ask whether a jury was rationally justified in finding guilt beyond a reasonable doubt.  *See Watson v. State*, 204 S.W.3d 404, 414 (Tex. Crim. App. 2006).  We then determine whether the evidence supporting the verdict is so weak that the verdict is clearly wrong and manifestly unjust or whether the verdict is against the great weight and preponderance of the conflicting evidence.  *Id*. at 415.  We will not reverse a case on a factual sufficiency challenge unless we can say, with some objective basis in the record, that the great weight and preponderance of the evidence contradicts the jury's verdict.  *Id*. at 417.

In this case, the primary evidence offered at trial was the testimony of Officer Gutierrez.  Pease offered no evidence in his defense.  Gutierrez testified to each of the allegations in the jury charge.  Gutierrez testified that, during her pursuit of Pease, her speedometer read 80 miles per hour.  Gutierrez also testified that she was pursuing Pease in a 40-miles-per-hour residential area.  This testimony supports the allegation that Pease was driving 80 miles per hour in a 40-miles-per-hour zone.  Gutierrez further testified that when Pease passed her, he was driving so fast that her patrol car shook and swayed.  This testimony supports the allegation that Pease passed a police vehicle at an extremely high rate of speed.  Gutierrez also testified that she observed Pease maneuver into the middle lane of traffic and cause another vehicle to swerve into the right-hand lane to avoid being hit.  This testimony supports the allegation that Pease almost struck another vehicle while traveling at a high rate of speed.  Gutierrez further testified that she turned on her overhead lights and siren and that Pease did not pull over during the pursuit, which lasted at least half a mile.  This testimony supports the allegation that Pease disregarded patrol car overhead lights for several

7

blocks. Finally, Gutierrez testified that Pease had an extremely strong odor of alcohol on him, exhibited slurred speech during his arrest, was stumbling and staggering, and refused a breath test at the police station. This testimony supports the allegation that Pease was consuming alcohol and operating a motor vehicle.

The jury is the exclusive judge of the facts, the credibility of the witnesses, and the weight to be given to the witnesses' testimony. *Jaggers v. State*, 125 S.W.3d 661, 670 (Tex. App.—Houston [1st Dist.] 2003, pet. ref'd) (citing *Penagraph v. State*, 623 S.W.2d 341, 343 (Tex. Crim. App. 1981)). An appellate court must be appropriately deferential to the fact-finder's role at trial. *Harvey v. State*, 135 S.W.3d 712, 717 (Tex. App.—Dallas 2003, no pet.) (citing *Jones v. State*, 944 S.W.2d 642, 647-48 (Tex. Crim. App. 1996)). The jury may believe all, some, or none of any witness's testimony. *Sharp v. State*, 707 S.W.2d 611, 614 (Tex. Crim. App. 1986); *Jaggers*, 125 S.W.3d at 670. The jury could have rationally chosen to believe the testimony of Officer Gutierrez, especially in the absence of any controverting testimony. We hold that the evidence is legally and factually sufficient to support Pease's conviction for reckless driving. We overrule his second point.

**Judicial qualifications**

In his third point, Pease asserts that his conviction is "null and void" because the trial judge, who is retired and was sitting by assignment, "did not take the oath of office as required by the Texas Constitution" and, therefore, "lacked the qualifications to preside over the case." *See* Tex. Const. art. XVI, § 1. Pease did not raise this issue at trial. However, a challenge to a trial judge's

8

qualifications may be raised for the first time on appeal. *Wilson v. State*, 977 S.W.2d 379, 380 n.3 (Tex. Crim. App. 1998).

Pease's argument on this issue is as follows:

> The trial judge in this case, Judge Bill Bender, retired on March 24, 2000 and submitted the required oath at that time. No oath has been submitted since then. Retired judges must take the same oaths required of appointed judges and as such are subject to the same time-frame requirement. Elected judges must take an oath with each new term. Judge Bender has not taken the oath for almost seven years.

Pease provides no evidence to support the above contentions.

Citing *Prieto Bail Bonds v. State*, 994 S.W.2d 316 (Tex. App.—El Paso 1999, pet. ref'd), Pease argues that retired senior judges must take the oaths required of appointed officers under the Texas Constitution. *See id*. at 320-21. Even assuming the validity of this argument,[2] "we 'must indulge every presumption in favor of the regularity of the proceedings and documents' in the trial court." *Murphy v. State*, 95 S.W.3d 317, 320 (Tex. App.—Houston [1st Dist.] 2002, pet. ref'd) (citing *McCloud v. State*, 527 S.W.2d 885, 887 (Tex. Crim. App. 1975)). "The presumption of regularity is a judicial construct that requires a reviewing court, 'absent evidence of impropriety,'

---

[2] In a case involving a peace officer who had allegedly failed to take the constitutional oath, this Court, in an opinion authored by Judge John Onion, disagreed with the reasoning in *Prieto*:

> The *Prieto* case leaves many questions. If a retired senior judge opts to retain his judicial capacity as permitted by law and accepts temporary assignments from time to time to different courts, what appointed de jure office does he or she hold? Who is the appointing authority? What is the term of such office? How often must the constitutional oaths be taken by the senior judge? We disagree with the reasoning of the *Prieto* court.

*Delamora v. State*, 128 S.W.3d 344, 358-59 (Tex. App.—Austin 2004, pet. ref'd).

to indulge every presumption in favor of the regularity of the trial court's judgment." *Id*. (citing *Light v. State*, 15 S.W.3d 104, 107 (Tex. Crim. App. 2000)).

This presumption of regularity applies to appellate challenges of visiting trial court judges for alleged failures to take their constitutionally required oaths. *Id*. Furthermore, "an appellant who makes such a challenge must make a prima facie showing that the trial judge did not take the required oaths before we will consider the issue on the merits." *Id*.

Pease has failed to meet this burden. Without citing to any proof in the record, Pease merely alleges that Judge Bender failed to take the required oaths. That is not enough to overcome the presumption of regularity. *See id*.

In addition to the constitutional oath requirements, Pease also refers to the statutory requirement that retired judges sitting by assignment certify to the presiding judge a willingness not to appear and plead as an attorney in Texas courts for a period of two years. *See* Tex. Gov't Code Ann. § 74.055(c)(6) (West 2003). Once made, this certification renews by operation of law every two years, unless the retired judge revokes it in writing. *See id*. § 74.0551(b), (c), (d) (West 2003). Pease concedes that the trial judge submitted the required certification on March 24, 2000. Again, Pease provides no evidence that this certification has since been revoked. On this record, we must presume that Judge Bender has not revoked his certification. *See Murphy*, 95 S.W.3d at 320 (presumption of regularity in proceedings absent contrary evidence). We overrule Pease's third point.

## CONCLUSION

Having overruled Pease's points of error, we affirm the judgment of the district court.

_____

Bob Pemberton, Justice

Before Justices Patterson, Pemberton and Waldrop

Affirmed

Filed:   August 9, 2007

Do Not Publish